Americas No. 22-13213 United States v. Quarterman May it please the Court, Counsel. My name is Megan Salant, and my office represents Mr. Quarterman on appeal. I would like to reserve three minutes for my rebuttal. Although Mr. Quarterman raised three issues in his initial brief, subsequent Supreme Court case law rendered one of them moot, and so today I will just be discussing the Erlinger issue and the motion to suppress. Taking the issues in reverse, the Court has just spent 30 minutes discussing Erlinger, so I will not belabor that point. The government has conceded error in Mr. Quarterman's case, and Mr. Quarterman maintains that that error was not harmless. The indictment, which Mr. Quarterman pled to, did not allege each of the elements of the 924E offense, leaving out the separate occasions element that we now know was required under Erlinger. And at sentencing, the government presented evidence of the separateness over Mr. Quarterman's objection, and even that evidence, we would argue, was insufficient to establish beyond a reasonable doubt that his offenses were committed on different occasions. The charging documents, which arguably may not have been admissible in front of a jury making this determination, indicate that the drug sales were made to the same law enforcement officer, the same undercover officer within that agency, selling the same drugs within the same jurisdiction. We don't know anything, we just know, we don't know any details about where the drugs were. There was a home invasion robbery in the middle, right?  And doesn't, excuse me, doesn't Wooden say, that, I lost my place, anyway, that if there's an, there it is, there's significant intervening events that that can create a separateness for similar crimes on either side? I agree, that is what Wooden says. But in this case, we don't know why, we don't know anything about the robbery. So for all we know, it could have been a stash house robbery that had to do with where he was getting his supply, or, you know, we don't have any evidence regarding the robbery. Nor the other offenses, I mean, everything was objected to in the PSR, so all we have, the dates of his offenses and the dates of his convictions. Without more, I agree that there is an intervening event element to be considered by this court, but I would not concede that in this case, we know that it was not a part of the same scheme. So we, here we have a 20 day gap between the drug sales. Is, at some point in time, is that simply too much, where it has to be separate occasions? I believe, no, I think that what the, what the Supreme Court has said is that you can't look just at the dates. And I think in this case, without any more evidence, the dates are all we have. So I don't think that here we can say that Mr. Quarterman's occasions would have been, excuse me, offenses would have been found on occasions separate from one another beyond a reasonable doubt. We just don't have any unobjected to evidence that would have been presented to the jury. I mean, what's a, what would it take to show that they are separate? I mean, if, if time alone isn't enough, even different crimes, you know, an armed robbery separated by two, or two different drug sales separated by an armed robbery. But if the distance apart is two years from each rather than weeks, if we're not supposed to just rely on time, then what, what can we assume that a jury would rely on? Well, here, is there any way to find an error harmless? I think that, well, sure, if there's more evidence on the record, but here we don't have that evidence. So we don't have the evidence to back up to say, well, certainly if the, and I'm saying what, what evidence, what evidence would show if we did have it, that these were separate? Well, I know a recent panel of this court, they had found separateness where there was testimony from the law enforcement officers about the nature of their investigations and the actual crimes. There were sentencing transcripts, there were plea colloquies. But what was the evidence that made it clear that those were different as opposed to just, there was more evidence? I'm not sure. I, I, it wasn't specified in the opinion. I'm not sure exactly what it was, but I would assume that it involved the character of the offenses was different. Maybe they were separated geographically. Maybe they didn't involve the same law enforcement agency. Perhaps the UC wasn't the same. I'm not sure, but we don't have any of that evidence here. So it's not really relevant to whether or not here, Mr. Quarterman's offenses were proved beyond a reasonable doubt to be separate. Like my colleague said earlier, it is the government's burden to present that evidence. And they knew at sentencing that he was objecting to this finding. And yet this was the only evidence that was presented was just the charging documents and the convictions from state court. So we would, I would maintain that, that it can't, in this case, it can't be found beyond a reasonable doubt that Mr. Quarterman's offenses. It seems like in most cases, what we're going to have are shepherd documents. And I think that means functionally that if these offenses can't be considered separate beyond a reasonable doubt as harmless error, then it's hard for me to see really how very many offenses would be considered separate. Because you can always come up with some theoretical reason why offenses might be connected. And if the government has the burden to disprove the most I don't want to say fanciful, but to disprove kind of any theory that counsel can come up with about how these offenses might have been connected such that some jury somewhere could consider them to have happened on the same occasion, then it seems like, you know, Rivers in particular is a dead letter. Yeah, I agree that they don't have to come up with and they don't have to have enough evidence to exclude every, you know, hypothesis. But as I said, in this case, there wasn't any evidence. So, you know, the charging documents were from a NOLO plea in state court. All of the convictions happened on the same day. They all received the same sentence. They all ran concurrently. I just don't, I'm not arguing that you have to come up with every, you have to, excuse me, disprove every scenario. But in this case, it clearly wasn't done. But it seems like the idea here is that maybe the home invasion was also a drug stash that was related to the drug sales that happened on either side of it. I mean, that seems like a pretty remote possibility to me, honestly. It's not even a, you know, a home invasion I think is typically a very different crime than a drug stash. Maybe that's wrong, but it seems like that's a pretty remote possibility. And to have to disprove factually something like that is, it seems perhaps more than would be expected to show that a reasonable jury would consider these separate offenses. Sure, but even like an arrest, an investigation report or an arrest report, that could have helped, but we don't have that here. So it might be easy to disprove, but it's not our burden to, to, we're just here to respond to what the government presents. And without anything else, we would say that the government hasn't met its burden. I don't want to take up too much of your time. Move to the next issue if you want to. I would like to move to the next issue if I may. Mr. Quarterman has also, is also asserting that the lower court's denial of his motion to suppress was an error. In denying the motion to suppress, the lower court explicitly found that the investigator's search of Mr. Quarterman's or a search incident to arrest. Lower court also did not make any factual determination regarding any claim of abandonment and instead relied solely on inevitable discovery to allow the evidence to remain as a part of Mr. Quarterman's case. What's interesting about inevitable discovery is that in order to show inevitable discovery, there has to be some indication that what happened, I'm sorry, that the evidence would have been discovered through the course of any ordinary investigation or process. And in this case, we are in the unique position of seeing that there were two different actions taken with two different pieces of property. So Mr. Quarterman abandoned a vehicle that one officer dealt with, and then there was the backpack, which another officer dealt with. If there had been a policy for these officers on what to do with this property when arresting somebody, one would think that the outcome would have been the same, that either the backpack and the car both would have been taken into custody, impounded, and then inventory searched, or they would have both been surrendered to another party. Now, of course, the law enforcement was not required to find alternate means for the backpack, but there simply was no evidence of policy about what they were supposed to do with personal property upon Mr. Quarterman's arrest. We do have to review the district court's factual findings for clear error, right? Correct. And didn't the district court credit PLR's testimony that he planned to retrieve the backpack before Quarterman said anything, meaning that it would have been processed when Quarterman was taken into jail for the domestic violence allegation, violence allegation, and resisting arrest? I don't know because we don't have a policy, so that's exactly the problem. If there was only the backpack, that would be a perfectly reasonable conclusion. Someone's arrested with personal property, it goes to the jail. But we have this unique factual scenario where we know that there is no consistency, and so one law enforcement officer exercised their discretion. Officer Peeler, by the way, didn't even intend to search it. He did not even claim that it was policy to search it in the field. He intended to just turn it over to the arresting officer. The other officer, like I said, met with this car instead of impounding it and inventorying it as part of that, decided to relinquish it to Mr. Quarterman's girlfriend. Did she request the car? Do I remember that? You know, I'm not sure about that. I can't. Because it seems like that's relevant. If she had requested the backpack and they had said no, then maybe we have a different set of facts. But I think we know that she didn't request the backpack, right? Yeah, I do not maintain that she requested the backpack. I will say that Mr. Quarterman did ask to speak to his girlfriend repeatedly before the search of the backpack started. So it is very likely that he had every intention of telling her or asking her if she would come retrieve the backpack. It's also possible that she didn't remember that he left with the backpack. I mean, you know, I mean, but she definitely testified that she would have been happy to take the backpack had they offered it to her. I will reserve the rest of my time. Thank you. Mr. Milligan. Good morning, Your Honors. Gary Milligan on behalf of the United States. I don't want to start off by giving sort of a general speech because you've already dealt with a lot of this this morning. I did want to kind of take the issues in reverse order since we talked most recently about the search of the backpack. I wanted to address that. The government's position is that the district court did make findings on page 8 of its order that the bag was going to the jail. That's where it was going to be heading. That is supported by testimony in the record that the backpack was searched, page 62 through 65 of the hearing, for items that were not going to be allowed at the jail and that it was on page 98 searched because it was going to the jail. Defense counsel on oral argument today makes a lot of whether or not there is a specific policy and this difference between the car, the backpack. Clearly there's a difference between a car and a handle. In addition to that, if you look at the Watkins case, 13F4-1202, it talks about the government must show only that the police would have discovered the evidence by virtue of ordinary investigations of evidence and leads already in their possession. Then you look at the Johnson case, 777F3-1270. Inevitable discovery exception applies to situations where police discover evidence that would have been later discovered in an inventory search. It doesn't talk about a policy requiring them to take it there. It requires about this is something that would have occurred in the normal course of what was happening. You have testimony, very specific testimony from the deputies on the scene that this was going with the defendant to the jail and that's why they searched it. I see a contradiction though in that testimony because one officer testifies, oh, it would have been searched at the jail. The other officer testifies, we had to get the contraband out before it went to the jail. How is that consistent? I believe it's consistent in the fact that if the backpack was going to the jail, it had to be searched. Whether it could be searched at the scene or should have been at the jail, I don't think is important in terms of the fact that it had to be searched before it was processed. It is inconsistent in terms of when the officers think it should or could have been done. I believe based upon even what the district court found, was that it shouldn't have been done in the field. It should have been done at the jail. It should have been done at the jail, right? I'm not sure. I can't recall what the officer did with the gun that he found. You don't necessarily want that rolling around in the back of the police truck or whatever. Does that put any suspicion on this that he was doing a search that really should have happened at the jail? Clearly, the concern that Your Honor brings up about whether or not there should be a gun rolling around in the back of the vehicle is a legitimate concern. At least what we're working from is what the district court's findings were. In the footnote on page 8, at the bottom of page 6, the district court pretty much found at that point that the in-the-field search wasn't proper because the government hadn't shown it was guided by established department policy. However, the government would assert that that is not what is essential here. What is essential here is that it inevitably would have been searched and found if it had gone to the jail because that was the testimony that it was going to the jail and that it had to be searched because they certain types of items, such as drugs, guns, those things that had to be searched in an inventory search before being placed into property at the jail. Unless there's more questions about that issue, I'll move on to the earlier. You've heard a lot about this. The cases are, this case, other than the intervening home invasion robbery, is not a lot different than the other case this morning. We're dealing with a 20-day time period here separating the two sales. The government's position, as you've heard earlier, now we'll hear again, is that that pen sort of sets the outside limits. We have rivers on one side, finding that sales that were each four days apart, total of eight days, was such that this court could not have said whether a jury for sure would have found that those were separate occasions. You've got pen that uses a very, very different kind of language. I mean, the way this court couches rivers is, based on these circumstances, we can't say what the jury would have done. However, pen uses a very different tone. The no reasonable person would say that two sales 30 days apart occurred on the same occasion. Very definitive, very concise, and the government's position is that pen sort of sets a, obviously you have to look at all the factors, but that when you look at time periods, pen is making a very definitive statement about the 30-day mark. And so you've got this situation where we have facts that fall between the two. We have 20 days in this case. The government's position is that looking at this, looking at the time period, and looking at that language, that we are closer to the situation in pen. Didn't Wooden say that courts have nearly always treated offenses as occurring on separate occasions if a person committed them a day or more apart? That is true. And so it also says, Wooden also says that, you know, in many cases a single factor, especially time or place, can be decisive in differentiating occasions. Now, there's been some argument today that Erlinger upset these findings in Wooden, but the government's position is that's not the case. I mean, Erlinger stressed the nature of the totality of the factors. Erlinger didn't add additional factors. The three factors that we find in Wooden are, that we talk about in Erlinger, were also the three factors that Wooden sets up. Timing, proximity, and character. So the fact that Erlinger stresses that this is a multi-factor test doesn't undermine Wooden's language that talks about how, yes, there are three factors that we look at. It's multi-factor. But that one of them can, at times, be a decisive kind of thing. I mean, the archetypal example of the same occasion would be if you're committing an armed robbery at a bank and you are convicted for stealing the money and, you know, assaulting one person and killing another, right? I mean, those events happen on the same occasion. And it's true that events can be, there can be circumstances where it's not quite so clear as that, that they happen on the same occasion. I think that's why the Supreme Court has had to look at it. But do we have to, does the government have to do something to kind of show that there's no plausible scenario in which these crimes could not have been, could have been, I'm mixing myself up, could not have been committed on the same occasion? Well, we do have to show to the the, however, when you look at the factors, the tests, the government believes that that the timing of these can, in fact, demonstrate that. We've already heard earlier in these discussions the fact that, you know, that there is no, there is no dispute that if enough time goes on, that clearly that's enough. If it's multiple years, clearly enough. If it's a year between the two, like I won't argue clearly enough. You've got the USV Valencia. I know that, do you think, I mean, do you think that everyone would agree that that's enough? What if you had a multi-year scheme to sell a certain amount of drugs to an informant? I'm not confident that, I think of that, I'm sorry, I mean, I mean, from speaking only for myself, I think that that would establish separate occasions, but I'm not confident that, you know, all defendants would concede that those were separate occasions, too, based on the kind of perspective we've heard that timing alone can't decide it. Well, in that case, I think what you would have, often in those cases, the way it's charged, it would be charged in a conspiracy. When you're dealing with a drug scheme that's taken place over extended periods of time. I mean, if you have a situation also, but here we're dealing with individual sales, to the same undercover, but individual sales. If you had a situation in your case where there was an individual sale, a series of individual sales, perhaps 10 of them over the course of a year, all to the same officer, and they chose to do it as individual sales, but all of them, could there be an argument that you're making that somehow that these were all part of the same thing? I guess you could make that argument. I don't believe that that would be successful. I believe if they were spaced out sufficiently, certainly 30 days apart, each of them, that once again, they're separate occasions. How would you argue to a jury in that scenario that it was a distinct sale? That each time this person did this, they were contacted by the undercover, that there was a distinct conversation each time, that there was a location that was set up each time, that there were separate payments made each time. Each of these were distinct acts that took place. Certainly not part of what would be considered to be a larger conspiracy, which sometimes can be charged with these, but in that case, you're talking about a number of different factors other than just a buyer-seller relationship between an undercover and a person who's selling cocaine and drugs. I'd also say in this case, I would point out that there was some discussion earlier about the nature of the sales. One of the factors that you can look at here, part of the evidence that government believes that shows that they were distinct and not part of some kind of larger ongoing transaction, is that they weren't for the same amounts each time. Same drugs, but if you were setting up multiple buys, trying to buy a certain amount, and you were doing it over two different ones, the implication would be that each time you would buy a half gram, right? So first time it was a half gram and four grams of marijuana, half gram of cocaine. Second time it was 1.2 grams of cocaine and 6.2 grams. So it wasn't, at least the amounts are not indicative of a situation where you have a discussion at the beginning, hey, I want to get this much from you, but I don't have this much money, so please sell me this much right now and then sell me this much later. These amounts are... Do you concede that that sale would be, that those two sales would be the same occasion, or are you just saying that someone could argue that they would be? I'm just saying that someone, if someone was trying to argue, because the question from the court is, how would I argue this to a jury? And these are some of the factors that I would look at in arguing it to a jury. If I was to answer the court's question, I'm not conceding that these are in any way, shape or form, part of the same transaction. But if that was the counter-argument, the argument to the jury would be, no, these are very different, distinct transactions that took place. Because even if you did say, I have 10 grams of cocaine to sell you, and someone said, well, I've got the money for five grams today, why don't I pay you and get the rest of it next week? I'll give the money between now and then. It doesn't seem to me that those two sales happened on the same occasion in any event. I have a hard time seeing how those things would be the same occasion. They may be part of the same scheme, but that doesn't mean that they happened on the same occasion, according to the factors outlined in Whitten. The government certainly wouldn't concede that they were. We're just sort of talking about hypotheticals in terms of how this potentially could be argued to a jury and some of the factors that the government sees that are important that would, at least from our perspective, make these two distinct events. In addition to that, one of the other things I was going to talk about was the home invasion robbery a little. We do believe that that is an additional fact that takes us outside of the realm of what this court did in Rivers. It is an intervening event. It's very different in character. While we have the PSR and we know from the PSR what the nature of that was, the PSR was objected to, so it's not part of the record. However, this argument that we can speculate about whether it was part of a robbery of a stash house or something like that, that wouldn't necessarily make it part of the same transaction in this case. I mean, we're talking about distinct sales to an undercover. We're not talking about sales to an individual and then possibly going and robbing the individual back. I mean, these were two police officers. So even if we speculate about the nature of this home invasion robbery, it's very different from the nature of what the sales were since they involved the police. I see that my time has expired and I would ask that this court please affirm. Mr. Mulligan, I have a question. Sorry, Your Honor. Have any of the cases discussed whether or not in this harmless error review that the error is structural? Yes, Rivers actually. Because there's a body of law which says that structural error cannot be harmless. I would say this court settled that issue in the Rivers case. Rivers specifically. But you would have to settle it post-Erlinger, wouldn't you? It was settled post-Erlinger. So Rivers came out post-Erlinger and this court specifically said that it determined that it was not structural and that harmless error applied. And so that would be our argument is that this court's already ruled on that. I'm happy to answer anything more about that. That answers the question. Thank you, Your Honor. Thank you. Thank you. Roberto. Thank you. Just in response, I want to point out that the fact that we are speculating about which facts or I'm sorry about the scenarios of whether or not the robbery was part of the same occasion. That is an indication that there's not enough evidence beyond a reasonable doubt that they were in fact separate occasions. And even if the robbery was separate from the, excuse me, the drug sales, there would have to be evidence that the drug sales were separate and something to establish. We don't have a lot of case law. We don't have any case law on what an intervening event is. So there's just not enough evidence here in order to find that Mr. Quarterman's offenses occurred on separate occasions. Also, with regards to the motion to suppress, in the Supreme Court held in Florida v. Wells, that without any policy, there can't be suppressed. I'm sorry, without any policy, the evidence cannot be admitted because there is no indication that there was ever any limit on the police officer's discretion. And that is exactly the case that we have here, is that each officer used their own discretion to do what they thought was the right thing. And I'm not saying that those things are the wrong things, but without any guidance to what is going to happen at an arrest to an arrestee's personal property, the officers are just going to do whatever they want. And that was clear when Officer Patton said, I searched his bag because it was heavy. If he felt that it was heavy and was worried that there might be in it that was dangerous, which, as I pointed out in my briefs, there are lots of things that could have made the backpack heavy, he very easily could have gotten a warrant. Does that mean, though, that you could, under that rule, does that mean you could never have inevitable discovery as long as there are not procedures for the kind of inventory search? Well, I don't think it's unreasonable to expect there to be some procedures. I agree, procedures make sense, but in their absence, does that mean you can never have inevitable discovery because you just would never really know what would happen? No, I don't believe that is true. But like I said, in this case, we have, like I keep saying, we have this unique factual scenario that the officers are using their own discretion to decide what to do with what things. What about the fact that once the bag reached the jail, it certainly would have been inventoried, right? We don't know that it would have reached the jail. But what about the testimony of the officer that he intended to transport the bag to the jail? The district court credited that testimony, so I don't know what we do with that since that's a factual finding, I think, that the district court made. So once we know the bag was going to go there, then don't we have to assume that the inventory would have been taken? I believe that that finding was an error by the district court because it was not based on any evidence in the record. But it was a credibility determination, right? And so the clear error standard, for better or for worse, is very high. So we would have to find, you know, there would have to be a lot of evidence to show that that was incorrect before we could find that it was clear error. If I could just answer your question, I think that saying that one officer testified that his intention was that one thing would happen proves our point. That even, I mean, the officer might have thought that's what was going to happen, but that's not necessarily what the other officers thought. And so it shows that that officer was going to use his discretion to take it to the jail, but we know that other officers decided to do something else. With regard to the motion to suppress, Mr. Quarterman respectfully requests that this reverse the lower court's order denying the motion. And with regard to the Erlinger issue, Mr. Quarterman respectfully requests this court vacate his sentence and remand the case for him to be sentenced to what he pled to. I have a question. Oh, sure. Yes. In deciding harmless error, the court has to hypothecate a case, does it not? Yes. Here we said we have to create a hypothetical case. And the question is what's in it? Sure. In my case, in this case? Your case or the other case, what goes, just a hypothetical case. We've got plain error review. And so the question is, we have to have a hypothetical case, don't we? Oh, if I understand your question. What I'm driving at is if we relied on evidence, I'm the district judge now. I relied on evidence. I can't do that because I'm making fact findings basically. Correct. So then we have to have a hypothetical case, do we not? Yes. There were three convictions and they were occurred on a trial jury. So now we decide whether the error is harmless. Correct. What do we put in the case other than the three convictions? Well, nakedly by number. I'm sorry, say that again. What do we put in the hypothetical case other than three convictions that you use a statutory basis for the convictions? Sure. Well, I would argue in Mr. Quarterman's case, we don't have anything. No, that's all you have. Right. That's all that the government. In any case. Oh, well, like I said, there have been previous cases. Deciding plain error. Is there anything other than the pure naked convictions that we can look at? On plain error, I'm not sure, Your Honor, but. Well, we do have a record. Okay. This case happened before earlier. So we've got a sentencing record with all this evidence in it. You understand? Yes. What can we look at to determine plain error? Can we look at any of it other than the naked conviction by statute? I believe it would depend on what was objected to. And what that evidence was. Well, why would there have to be an objection if the defendant is saying that the law has now changed? And I couldn't have anticipated it. Oh, I see what you're saying. We have a constitutional error here. Correct. Okay. I'm sorry. I would argue that. So the question is, what of the whole record can we look at to determine harmlessness other than the naked statutes? There are statute one, statute two, statute three convictions. And what they are, what the convictions are. No facts about them. I would say that's all that you can look at. If that's all that's in the evidence. All right. All right. Thank you. Thank you, Judge Shovlat. Thank you so much. Thank you, counsel. You guys understand what I'm talking about. Next we